IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| DIANA M. ENDICOTT, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:11CV00025 |
| | ) |
| v. | ) **OPINION** |
| | ) |
| MICHAEL J. ASTRUE, | ) By: James P. Jones |
| COMMISSIONER OF | ) United States District Judge |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

*Gregory R. Herrell, Arrington, Schelin & Herrell, P.C., Bristol, Virginia, for Plaintiff. Eric P. Kressman, Regional Chief Counsel, Region III, Jordana Cooper, Assistant Regional Counsel, and Stephen M. Ball, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Diana M. Endicott filed this claim challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income pursuant to Titles II and XVI of the Social Security Act (the "Act"). 42 U.S.C.A. §§ 401-433

(West 2011), 1381-1383f (West 2003 & Supp. 2011). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Endicott filed her initial application on February 9, 2007, alleging that she became unable to work on September 18, 2006. That application was denied. She filed a second application on September 26, 2007. This application was denied initially and on reconsideration. A hearing was held before an administrative law judge ("ALJ") on May 20, 2010. At the hearing Endicott, represented by counsel, and an independent vocational expert testified. The ALJ denied her claim and that decision became final when the Social Security Administration Appeals Council denied her request for review. Endicott then filed her Complaint in this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed. The case is ripe for decision.

II

Endicott was born on December 3, 1963, making her a younger individual under the regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c) (2011). She is separated from her husband and has three adult children. Her work history included work as a retail cashier, work in a furniture factory stuffing cushions, and work in a residential support facility. She stated she became unable to work due to

-2-

Case 1:11-cv-00025-JPJ-PMS   Document 19   Filed 02/04/12   Page 2 of 16   Pageid#: 529

"nerves" in September 2006. She claimed disability due to bilateral lower extremity pain, peripheral neuropathy, restless leg syndrome, depression and anxiety. She also claimed problems with her hands due to arthritis.

Records from Stone Mountain Health Services show that Endicott first presented with complaints of anxiety, depression and episodes of syncope in July 2004. She was being treated with Effexor for her depression. Endicott first complained of pain in the lower extremities in February 2005. She was examined in February and October of 2005 and at that time there were no apparent abnormalities in the lower extremities. In January 2007, she complained of pain in the left leg, accompanied by jerking and discomfort that kept her awake at night. The nurse practitioner diagnosed restless leg syndrome and prescribed Requip. As to her mental status, she reported that the medication helped her depressed moods, but that she was experiencing increasing anxiety. She was alert and oriented, with normal mood and affect. She was prescribed Klonopin for anxiety. When examined in March, April, and June 2007, she reported doing well on Effexor.

In March 2007, Endicott again complained of pain in her left leg and noted that the symptoms increased with prolonged sitting or standing. She had no claudication or history of a back injury. The examination showed no spinous or paraspinous tenderness, a negative straight-leg raising test, and no lower extremity

weakness or sensory deficit.  The nurse practitioner recommended further study because the cause was unclear.  She was prescribed Neurontin for pain control.

In June 2007, Stone Mountain Health Services stopped her Neurontin treatment because of side effects and switched her onto Topamax.  At her September 2007 follow-up, she reported that her pain had improved with Topamax.

In August 2007, Endicott was suffering from a significant increase in anxiety and depression because of family difficulties.  She was assessed with situational acute anxiety and was referred to Crystal Burke, LCSW.  She was also given Klonopin for her anxiety.  On her evaluation, Ms. Burke described Endicott's symptoms as acute stress related to situational stressors.  At her September 2007 follow-up, she showed improvement in her anxiety with the medication, although she was still anxious and depressed.

Later in September 2007, Endicott was evaluated by Dr. Fahr at Abingdon Psychological Services for suicidal and homicidal thoughts.  She was taken to Johnston Memorial Hospital for possible admittance but the record does not indicate that she was admitted.  At a follow-up with Dr. Fahr in October, he noted that she was calmer.

In October 2007, she was seen again at Stone Mountain Health Services. She was ambulatory, in no acute distress and tests showed no abnormalities in her

-4-

Case 1:11-cv-00025-JPJ-PMS   Document 19   Filed 02/04/12   Page 4 of 16   Pageid#: 531

lower extremities. She stated that her anxiety had improved with Klonopin. In February 2008, Endicott stated that she felt she was doing better than before but she still suffered anxiety because of her family problems. She was also given a vitamin B12 injection for her legs but continued to complain of pain at her April visit. The pain had improved by her June visit.

In June 2008, Endicott underwent a nerve conduction study at Clinch Valley Medical Center to try to determine the cause of her lower leg pain. The study was apparently normal and did not reveal the cause of her pain.

In August 2008, Endicott was seen again at Stone Mountain Health Services and again complained of pain in her legs with walking and at rest and of depression and anxiety. At follow-up appointments, she reported that her depression and anxiety were exacerbated by her family difficulties. Examinations in January and March 2009 showed no clinical signs of a mental impairment.

In May 2009, Endicott was evaluated by Patricia Vanover, M.D.[1] She reported having peripheral neuropathy. She also told Dr. Vanover that she was having good results from Effexor and Klonopin and said that as long her family situation was stable, she remained stable. Dr. Vanover stated that she found "changes of peripheral neuropathy in both feet. No lateralizing signs are evident."

---

[1] Dr. Vanover provided a report detailing Endicott's work related limitations to the Virginia Department of Social Services in September 2007. Based on the medical record, this report was prepared before Dr. Vanover began treating Endicott.

(R. at 423.) Examination was otherwise normal. In December 2009, Dr. Vanover stated that Endicott had a "long-term history of quite severe idiopathic peripheral neuropathy." (R. at 419.) In March 2010, Dr. Vanover completed a disability form stating that because of "wrist pain," Endicott would be unable to lift more than 8 pounds, that she could not walk or stand more than 2 hours in a workday due to peripheral neuropathy, and that she would have poor ability to deal with work stresses, function independently, and maintain attention and concentration. In March 2010, Ms. Burke completed a medical source statement stating that Endicott would miss work more than 2 days a month but otherwise rating her abilities as generally good or fair except in the category of following complex job instructions.

Robert McGuffin, M.D., a state agency physician, completed a physical residual functional capacity assessment on June 5, 2008. He found that she could occasionally lift 50 pounds and frequently lift 25 pounds, that she could sit and stand for six hours, and that she would not be limited in pushing or pulling objects. She could perform a job requiring occasional balancing and stooping but would otherwise have no functional limitations other than vibration and common hazards. He found that her complaints were partially credible. Richard Surrusco, M.D., another state agency physician, conducted a second physical residual functional

-6-

Case 1:11-cv-00025-JPJ-PMS   Document 19   Filed 02/04/12   Page 6 of 16   Pageid#: 533

capacity assessment on January 12, 2009. He essentially agreed with Dr. McGuffin.

Joseph I. Leizer, Ph.D., a state agency psychiatrist, first evaluated Endicott on April 25, 2007. He noted depressive disorder and anxiety-related disorders but found these impairments non-severe. He evaluated her again on June 9, 2008, completing a psychiatric review technique form. He noted that her depressive disorder presented moderate limitations in maintaining social functioning and concentration, persistence or pace. He completed a mental residual functional capacity assessment and found Endicott to be moderately limited in understanding and carrying out detailed instructions, maintaining attention and concentration for extended periods of time, independently, sustaining an ordinary routine, completing a workday/week without disturbances from her psychological symptoms, accepting criticism from superiors, and getting along with co-workers. He noted that she had "responded to medication and treatment and should be capable of competitive unskilled tasks." (R. at 335.)

Richard Milan, Jr., Ph.D., another state agency psychiatrist, completed a psychiatric review. He generally concurred with Dr. Leizer, noting no worsened symptoms upon reconsideration. He concluded she was moderately limited but should be able to "meet the basic mental demands of competitive work on a

regular, ongoing basis despite the limitations resulting from her mental condition." (R. at 382.)

Endicott sought an evaluation from John W. Ludgate, Ph.D. in April 2009 at the suggestion of her attorney. She reported that she had never been hospitalized with a psychiatric condition and never seen a psychiatrist. Dr. Ludgate noted normal comprehension and an adequate attention span for testing, with no evidence of a thought disorder and good insight and judgment. Based on his interview and interpretation of the Minnesota Multiphasic Personality Inventory ("MMPI"), Dr. Ludgate found that Endicott was experiencing general anxiety disorder and major depression, recurrent, but moderate. He also stated his opinion that she would be "unable to work at this time at her former occupations . . . ." (R. at 401.)

At her administrative hearing, Endicott testified that she was disabled due to her legs, "wrist problems," and depression and anxiety. (R. at 36.) She said she had "quite a bit of pain" in her legs when she had been on them for a period of time. (R. at 37.) For example, she said that she could normally stand for about 20 minutes at a time. She also reported that her nerves bothered her at least once or twice a day for thirty minutes to an hour at a time, that she stays at home, and that she had crying spells frequently. During the day, she stays home and tries to clean the house which sometimes goes well and sometimes goes badly, if her legs are hurting. She sometimes goes grocery shopping with her daughter for help. The

vocational expert testified that an individual with Endicott's skill level and limitations could not perform her prior work but could perform several jobs in the national economy.

Upon careful review of the record, the ALJ found the following severe impairments: Bilateral lower extremity pain of unknown etiology, possibly due to peripheral neuropathy; restless leg syndrome; depression and anxiety. He concluded that none of these impairments met or equaled listing requirements and determined that Endicott had the residual functional capacity to perform medium work with certain exceptions. Based on her limitations, he assessed her ability to work at the light level of exertion.

Considering the testimony of the vocational expert, the ALJ determined that Endicott could perform a significant number of simple, light jobs available in the national economy and that, therefore, she was not disabled.

Endicott argues the ALJ's decision is not supported by substantial evidence. For the reasons below, I disagree.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental

impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In assessing DIB claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2011). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id*. The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Endicott first argues that the ALJ inappropriately substituted his own medical judgment for that of credentialed medical providers. Specifically, Endicott argues that the ALJ disregarded the opinions of Dr. Vanover, Ms. Burke and Dr. Ludgate. Treating physician opinions are assessed according to 20 C.F.R. §§ 404.1527 and 416.927, which provide that controlling weight is only appropriate when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. The Fourth Circuit has explained that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (quotation marks and citation omitted).

In discounting Dr. Vanover's opinions on Endicott's functional limitations and that Endicott's foot pain was caused by peripheral neuropathy, the ALJ noted that "the evidence does not indicate that the leg pain significantly limits the claimant's ability to ambulate, in that no abnormalities in her gait or station have been found and she does not need an assistive device for ambulation." (R. at 17.) Further, the record showed no clinical evidence of peripheral neuropathy. The ALJ explained that treatment records from Stone Mountain, including those of Dr. Vanover, "consistently show that examinations of the back and lower extremities have shown no abnormalities . . . . Electrodiagnostic testing in June 2008 showed no evidence of peripheral neuropathy in both feet." (R. at 21.) Even though the ALJ discounted Dr. Vanover's opinion on the cause and severity of Endicott's foot pain, he determined that the leg pain was a severe medically determinable impairment and accordingly limited her residual functional capacity to reflect the limitations he felt were supported by the evidence, including the opinions of multiple state agency physicians. *See Neitch v. Astrue*, No. 2:10cv00068, 2011 WL 3705113, at *4-5 (W.D. Va. Aug. 24, 2011) (finding that the ALJ may articulate appropriate reasons for discounting a treating physician opinion and rely, instead, upon a well supported opinion from state agency physicians).

Endicott also argues that the ALJ wrongly disregarded Dr. Vanover's opinion that Endicott would be absent from work about two days a month due to

her mental limitations. As the ALJ noted, the evidence does not show that Dr. Vanover is a psychiatrist or otherwise trained in the field of mental health. Further, it does not appear that Dr. Vanover conducted any examinations of Endicott's mental status or otherwise focused on her mental status. The ALJ was entitled to consider Dr. Vanover's lack of specialization in mental health. *See* 20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5). The ALJ was also entitled to consider the fact that Dr. Vanover did not document or reference any results of clinical evidence such as mental status testing. *See* 20 C.F.R. §§ 404.1527(d)(3), (4); 416.927(d)(3), (4).

The ALJ was also entitled to discount Burke's assessment of Endicott's limitations due to mental impairment because Burke, a licensed clinical social worker, is not an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(a); 416.913(a) (listing acceptable medical sources). Burke's conclusion that Endicott would be absent from work more than twice a month was inconsistent with both the rest of her assessment and with the evidence as a whole.

Finally, the ALJ was also entitled to give the opinion of Dr. Ludgate little weight. Dr. Ludgate was not Endicott's treating physician but was just a consulting examiner who assessed her once. As such, his opinion is not entitled to controlling weight. *See Bayhurst v. Astrue*, Civil Action No. 08-64 Erie, 2008 WL 5158266, at *7 (W.D. Pa. Dec. 9, 2008). Endicott argues that the MMPI, which

confirmed depression and anxiety, supports Dr. Ludgate's opinion. This is true to the extent that Dr. Ludgate determined she had moderate depression and anxiety, conclusions with which the ALJ agreed. However, Dr. Ludgate then jumped to the conclusion that Endicott was severely restricted in her ability to work. This opinion was apparently based on Endicott's reported symptoms and conflicts with the other evidence in the record and the ALJ thus accorded it little weight. *See* 20 C.F.R. §§ 404.1527(d)(2), (3); 416.927(d)(2), (3).

Endicott's second argument is that the ALJ's opinion is "irrational, offensive and not supported by substantial evidence." (Pl.'s Mot. for Summ. J. 13.) Much of this argument is a rehash of Endicott's argument that the ALJ inappropriately disregarded the opinions of Drs. Vanover, Ludgate and Burke. Endicott also argues that the ALJ failed to consider her testimony regarding leg pain and mental impairments. However, the ALJ was not required to take Endicott's claims at face value and as determinative of his decision. Rather, "[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591. The ALJ apparently gave more credit to Endicott's 2007 function report than to her hearing testimony, because the complaints it documented were supported by the objective medical evidence. This court will not "undertake to re-weigh conflicting

evidence, make credibility determinations, or substitute [my] judgment for that of the Secretary." *Id.* at 589.

Based on the record as a whole, including Endicott's testimony, the ALJ found that her leg pain was severe. However, in determining her functional limitations, he concluded that her subjective complaints of the "intensity, persistence, and limiting effects" of her leg pain were not credible in that the objective evidence and other testimony she had given indicated she had a relatively wide range of function. (R. at 16.) The ALJ's conclusion was also supported by the opinions of the state agency physicians. Overall, substantial evidence supports the ALJ's conclusion that while Endicott's leg pain was severe, it was not disabling.

As to her mental impairments, the evidence in the record shows that Endicott suffers from depression and anxiety but that these impairments have generally been kept under control by drug treatment. She certainly went through a period of somewhat serious exacerbation during the time she was undergoing family difficulties, but the record indicates that was a situational response which has been resolved by drug treatment. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). The evidence shows that although she exhibited signs of nervousness or sadness, she also was consistently well-groomed and cooperative,

Case 1:11-cv-00025-JPJ-PMS   Document 19   Filed 02/04/12   Page 15 of 16   Pageid#: 542

with normal behavior, appearance, and speech, with a range of daily activities and social contacts. The ALJ considered her mental impairments severe and limited her functional capacity accordingly. His conclusion is supported by substantial evidence.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: February 4, 2012

/s/ James P. Jones
United States District Judge